HARRY ATKINS v. JONES & LAUGHLIN STEEL CORPORATION AND OTHERS. MONTANIN COMPANY, INC., APPELLANT.

104 N. W. (2d) 888.

August 5, 1960—No. 37,958.

*Faegre & Benson, Paul J. McGough,* and *Wright W. Brooks,* for appellant.

*Roger S. Rutchick, Donald E. Rockne,* and *Thomas J. Burke,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action by Harry Atkins against Montanin Company, Inc., a New York corporation, and other defendants, for negligence resulting in injuries. The complaint alleged that on or about May 18, 1958, plaintiff, a truck driver for the Rock Island Transit Company, while hauling and unloading a certain product distributed by defendant Montanin Company, Inc., known as "Montanin," had been injured as a result of the negligent, careless, and unlawful acts of the defendants. This is an appeal by Montanin Company, Inc., from an order denying its motion to quash service of process and to dismiss the action on the ground that it is not subject to the jurisdiction of the Minnesota courts.

Montanin Company, Inc., hereinafter referred to as defendant, has no offices outside of New York and has no employees or agents here. It has never qualified as a foreign corporation in this state. Service of process was made upon it pursuant to M. S. A. 303.13, subd. 1(3), by filing duplicate copies of the summons and complaint in the office of the secretary of the State of Minnesota, from whence one copy was forwarded by registered mail to defendant at 90 West Broadway, New York City. Section 303.13, subd. 1(3), provides that:

"If a foreign corporation makes a contract with a resident of Minnesota to be performed in whole or in part by either party in Minnesota, or if such foreign corporation commits a tort in whole or in part in Minnesota against a resident of Minnesota, such acts shall be deemed to be doing business in Minnesota by the foreign corporation and shall be deemed equivalent to the appointment by the foreign corporation of the secretary of the State of Minnesota and his successors to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings against the foreign corporation arising from or growing out of such contract or tort. * * * The making of the contract or the committing of the tort shall be

deemed to be the agreement of the foreign corporation that any process against it which is so served upon the secretary of state shall be of the same legal force and effect as if served personally within the State of Minnesota."

Defendant interposed a special appearance and separate answer to the complaint. In the latter it denied that it had ever conducted business in Minnesota and prayed that the service of process as above described be quashed and the action dismissed for lack of jurisdiction. It also interposed special appearances and similar separate answers to cross-claims of other defendants (not parties to this appeal) and interposed a cross-claim against Chicago, Rock Island & Pacific Railway Company. On July 30, 1959, it moved for an order quashing, vacating, and setting aside the service of process and for dismissal of the complaint and cross-claims against it on the same ground stated in its answers and on the further ground that § 303.13 is invalid as a denial of due process under U. S. Const. Amend. XIV.

An affidavit by the president of defendant supporting this motion sets forth that the sole business of defendant is the sale of "Montanin," a trade name for hydrofluosilicic acid. Defendant sells this product primarily to the fermentation industry. All sales are made from its New York office and it maintains no salesmen outside of New York. Some of its sales are made directly to breweries and the remainder upon orders from brewery supply houses scattered throughout the country. The latter accept orders for "Montanin" and forward them to defendant in New York for acceptance and confirmation. Defendant maintains no contract relationship with any of the supply houses but pays commissions upon orders which they send in.

"Montanin" is purchased by defendant from Davison Chemical Company in Maryland. This company arranges to have the product shipped from the Du Pont Company, which produces it, to defendant in care of Robinson Brothers Chemicals, Inc., Brooklyn, New York. Shipments are made from Du Pont to New York in tank trucks. Under agreement with defendant, Robinson Brothers Chemicals, Inc., fills individual 5-gallon containers with the product in its Brooklyn plant. These containers are purchased by defendant from Jones &

Laughlin Steel Corporation and are forwarded from Lancaster, Pennsylvania, to defendant in care of Robinson Brothers Chemicals, Inc. Liners for the containers are purchased by Jones & Laughlin from Electronic Wave Products of New York City. After inspection by the Jones & Laughlin container division, the liners are installed, assembled into the containers, and again tested. The filled containers are shipped by defendant f. o. b. New York to the customer. The latter is billed by defendant from New York and payment is made to defendant in New York. None of the persons who handle and package the product are employees of defendant.

Defendant's affidavit also sets forth that, since all witnesses required by defendant live in New York or the vicinity, the expense of arranging for them to leave their business and attend trial in Minnesota would be prohibitive.

In opposition to the motion, an affidavit by one of his attorneys was submitted on behalf of plaintiff which sets forth that defendant has sold its product here for approximately 50 years; that some 50 lay witnesses, as well as 10 expert witnesses and the records from a number of hospitals in the St. Paul area, might be required to establish plaintiff's case; that the other defendants might require witnesses from as many as 10 different states; and accordingly that if the action were brought in New York undue hardship and expense would result to plaintiff and his witnesses.

In a memorandum attached to the order denying defendant's motion, the court set forth that:

"Whether the single transaction law applies to this case depends upon * * * whether the tort was committed in whole or in part in Minnesota. The action is based on 'negligence.' Without doubt the principal act of negligence occurred in the making and sealing of the container; that occurred in an eastern state. However, a mere failure to exercise reasonable care is not a tort. It only becomes a tort actionable as such when someone is injured as a proximate result of the negligent act. Damage is an essential element of the cause of action. * * *

"When a manufacturer or seller of an article, which is dangerous

if not safely contained, fails to exercise reasonable care in the packaging of the article, he is liable for the injuries caused by such negligent acts occurring to one into whose hands the article comes in the usual course of business even though there is no contract relation between the latter and the manufacturer or seller. * * * In this case the leakage of the dangerous substance occurred in Minnesota, and the plaintiff was injured thereby in this state. It is the opinion of the Court that the tort occurred therefore in part in Minnesota."

■ In Beck v. Spindler, 256 Minn. 543, 99 N. W. (2d) 670, in construing § 303.13, subd. 1(3), as it relates to contracts of foreign corporations, we adhered to the principles set forth in International Shoe Co. v. Washington, 326 U. S. 310, 316, 66 S. Ct. 154, 158, 90 L. ed. 95, 102, 161 A. L. R. 1057, 1061, that "due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " There we directed attention to the trend toward greater liberality in permitting state courts to take jurisdiction in suits against foreign corporations which have minimal contacts in the local forum, citing McGee v. International Life Ins. Co. 355 U. S. 220, 78 S. Ct. 199, 2 L. ed. (2d) 223, in support thereof, and noted the limitations expressed in Hanson v. Denckla, 357 U. S. 235, 78 S. Ct. 1228, 2 L. ed. (2d) 1283, that this trend did not herald the eventual demise of *all* restrictions on the personal jurisdiction of state courts, but that *minimal contacts* with the state continued to be a prerequisite to the exercise of power over nonresident defendants. There, in upholding the constitutionality of § 303.13, subd. 1(3), we relied upon and cited with approval Smyth v. Twin State Improvement Corp. 116 Vt. 569, 80 A. (2d) 664, 25 A. L. R. (2d) 1193,[1] which upheld the constitution-

---

[1]In commenting on this decision in Annotation, 25 A. L. R. (2d) 1207, the editor states: "The decision in Smyth v. Twin State Improv. Corp. (1951) 116 Vt 569, 80 A2d 664, 25 ALR2d 1193, supra, as the first appellate decision to hold squarely that jurisdiction over a foreign corporation may be acquired by virtue of a single tort committed within the state, has

ality of a similar Vermont statute in a case involving commission of a tort; and cited with approval Compania de Astral, S. A. v. Boston Metals Co. 205 Md. 237, 107 A. (2d) 357, 108 A. (2d) 372, 49 A. L. R. (2d) 646, certiorari denied, 348 U. S. 943, 75 S. Ct. 365, 99 L. ed. 738, with reference to a similar Maryland statute in a contract action. In summary we stated (256 Minn. 553, 99 N. W. [2d] 677):

"* * * It seems only fair to permit one who has suffered a wrong at the hands of a resident of a foreign state to sue in his own state irrespective of whether he can show multiple transactions or not."

Based upon Beck v. Spindler, *supra,* and the decisions cited therein, we hold that § 303.13, subd. 1(3), in so far as it provides that a foreign corporation "shall be deemed to be doing business in Minnesota" if it commits a tort in whole or in part within this state, and thereby designates the secretary of state as its agent for service of process in such event, is not violative of the due-process clause of the Federal Constitution.

■ Defendant contends, however, that under § 303.13, subd. 1(3), before a foreign corporation can be deemed to be doing business here by virtue of the commission of a tort, its tortious conduct must have occurred within the state. It asserts that in tort actions the validity of statutes of this kind[2] has been upheld only where the tortious conduct complained of was committed wholly within the state of the forum;[3] and directs attention to a number of decisions in which jurisdiction was denied where such conduct occurred entirely outside the forum,

---

been criticized by legal writers as a departure from traditional jurisdictional and due process concepts, but has also been welcomed as in line with the gradual development of jurisdictional concepts."

[2] Illinois Rev. Stat. 1959, c. 110, § 17; North Carolina Gen. Stat. 1957 Cumulative Supp. § 55-145(a)(4); Vermont Stat. 1947, § 1562; West Virginia Acts of 1957, c. 20; Maryland Ann. Code 1957, art. 23, § 92(d).

[3] Smyth v. Twin State Improvement Corp. 116 Vt. 569, 80 A. (2d) 664, 25 A. L. R. (2d) 1193; Nelson v. Miller, 11 Ill. (2d) 378, 143 N. E. (2d) 673; Painter v. Home Finance Co. 245 N. C. 576, 96 S. E. (2d) 731.

even though the damage or injury which resulted therefrom occurred within the court's jurisdiction.[4]

■ It is well settled that a manufacturer, regardless of privity of contract, is liable to an ultimate user of his product or to others who may reasonably be expected to be in the vicinity of its probable use for injuries arising from his negligence in the manufacture or containment of the product.[5] Assuming that here defendant's conduct in containing the hydrofluosilicic acid was negligent, the question remains whether such negligence constituted the commission of a tort in whole or in part within Minnesota so as to give jurisdiction to our courts under § 303.13, subd. 1(3).

In Restatement, Conflict of Laws, §§ 377, 378, the rules governing the locus of torts are set forth as follows:

§ 377. "The place of wrong is in the state where the last event necessary to make an actor liable for an alleged tort takes place."

§ 378. "The law of the place of wrong determines whether a person has sustained a legal injury."

In Schmidt v. Driscoll Hotel, Inc. 249 Minn. 376, 82 N. W. (2d) 365, the foregoing rules were recognized but not applied under the Civil Damage Act, § 340.95, since there application would have deprived the plaintiff of his remedy both in Minnesota, where the statutory violation occurred, and in Wisconsin, where the last event giving rise to his damages took place. We have repeatedly applied such rules in tort actions brought here for injuries sustained in foreign jurisdictions. Sohm v. Sohm, 212 Minn. 316, 3 N. W. (2d) 496; Gold-

---

[4]Mueller v. Steelcase, Inc. (D. Minn.) 172 F. Supp. 416; Hellriegel v. Sears Roebuck & Co. (N. D. Ill.) 157 F. Supp. 718; Putnam v. Triangle Publications, 245 N. C. 432, 96 S. E. (2d) 445; Johns v. Bay State Abrasive Products Co. (D. Md.) 89 F. Supp. 654; George Monro, Ltd. v. American Cyanamid & Chemical Corp. [1944] K. B. 432.

[5]Wright v. Holland Furnace Co. 186 Minn. 265, 243 N. W. 387; Lovejoy v. Minneapolis-Moline Power Imp. Co. 248 Minn. 319, 79 N. W. (2d) 688; Heise v. J. R. Clark Co. 245 Minn. 179, 71 N. W. (2d) 818; Ellis v. Lindmark, 177 Minn. 390, 225 N. W. 395; Smith v. Peerless Glass Co. 259 N. Y. 292, 181 N. E. 576; Prosser, Torts (2 ed.) § 84.

berg v. Cook, 206 Minn. 450, 289 N. W. 512; Hardgrove v. Bade, 190 Minn. 523, 252 N. W. 334. The basis of both rules is that damage is an essential element of a cause of action for negligence. 13 Dunnell, Dig. (3 ed.) § 6973.

The courts of a number of other states have likewise held that the law of the place where an injury is sustained governs actions for recovery therefor, even though the wrongful conduct which brought about the injury occurred in some other jurisdiction.[6]

■ If the principles above set forth are adhered to, and if the allegations of the complaint herein are established, it would follow that defendant was subject to the jurisdiction of our courts, since the last event essential to its tort liability—the injury of plaintiff—occurred here. Under § 303.13, subd. 1(3), such contact with a Minnesota resident constituted doing business here so as to make defendant subject to service of process as provided therein.

■ We recognize that in the decisions cited under footnote 4 an opposite result was reached because in such cases the *tortious act or conduct* complained of did not occur within the forum. There the fact that the injuries resulting from the wrongful conduct occurred within the state was held not material on the issue of jurisdiction. The basis for the distinction in the Illinois decision[7] was the statutory requirement of the "commission of a *tortious act* within this State." (Italics supplied.) Likewise, in the North Carolina decision[8] the statute applied only to "tortious conduct in this State," while in the Maryland decision,[9] the statute involved related to liability "for acts done within

---

[6]Cameron v. Vandergriff, 53 Ark. 381, 13 S. W. 1092; Connecticut Valley Lbr. Co. v. Maine Cent. R. 78 N. H. 553, 103 A. 263; Openbrier v. General Mills, 340 Pa. 167, 16 A. (2d) 379; Poplar v. Bourjois, Inc. 298 N. Y. 62, 80 N. E. (2d) 334; El Paso & N. W. Ry. Co. v. McComus, 36 Tex. Civ. App. 170, 81 S. W. 760; Anderson v. Linton (7 Cir.) 178 F. (2d) 304; Hunter v. Derby Foods (2 Cir.) 110 F. (2d) 970, 972, 133 A. L. R. 255; Mannsz v. Macwhyte Co. (3 Cir.) 155 F. (2d) 445; McGrath v. Helena Rubinstein, Inc. (S. D. N. Y.) 29 F. Supp. 822, 823; Reed & Barton Corp. v. Maas (1 Cir.) 73 F. (2d) 359, 361.

[7]Hellriegel v. Sears Roebuck & Co. (N. D. Ill.) 157 F. Supp. 718.

[8]Putnam v. Triangle Publications, 245 N. C. 432, 96 S. E. (2d) 445.

[9]Johns v. Bay State Abrasive Products Co. (D. Md.) 89 F. Supp. 654.

this State." The Vermont decision,[10] where the language of the statute is identical to our statute in so far as it requires that the *tort be committed in whole or in part in the state,* was not a case involving wrongful conduct outside the state's jurisdiction. It could be concluded from the foregoing that, in those states where the single-act statute bases jurisdiction upon *tortious conduct or acts* within the forum, the courts have denied jurisdiction where the conduct complained of occurred entirely without the state.

In Mueller v. Steelcase, Inc. (D. Minn.) 172 F. Supp. 416, our Federal district court in construing § 303.13, subd. 1(3), followed those decisions where the single-act statutes required tortious conduct or acts within the forum notwithstanding that our statute requires only that such "foreign corporation *commits a tort* in whole or in part in Minnesota." (Italics supplied.) There the court stated (172 F. Supp. 419):

"* * * this defendant performed no tortious act in Minnesota. * * * If jurisdiction were sustained * * * the door would be open to practically unlimited jurisdiction over foreign corporations and the concept of the required contacts and connections in this State to sustain jurisdiction would be entirely whittled away."

While recognizing the merit of protecting rights of foreign corporations not doing business here, we feel that such considerations are outweighed by the general objective of our single-act statute, that is to permit a Minnesota citizen injured here by the wrongful act of a foreign corporation to seek recompense therefor in our courts. Beck v. Spindler, *supra.* Based upon such considerations and the well-established principle that the place of the wrong is the place where the legal injury occurs, we conclude that if the allegations of the complaint are established it would follow that defendant has committed a tort within the state, and hence under § 303.13, subd. 1(3), may be said to have been doing business here so as to be subject to our jurisdiction thereunder.

---

[10]Smyth v. Twin State Improvement Corp. 116 Vt. 569, 80 A. (2d) 664, 25 A. L. R. (2d) 1193.

■ Defendant finally asserts that § 303.13, subd. 1(3), is invalid because its provisions are not applicable to foreign insurance companies; or to nonresident individuals and partnerships, which, it contends, constitutes an unreasonable and arbitrary classification, offensive to the equal-protection clause of U. S. Const. Amend. XIV. It is well established that if a classification of subjects by the legislature be deemed reasonable and rests upon substantial distinctions, it will not be held arbitrary or invalid. Town of Bridgie v. County of Koochiching, 227 Minn. 320, 35 N. W. (2d) 537; Loew v. Hagerle Brothers, 226 Minn. 485, 33 N. W. (2d) 598.

Here, prior to the enactment of § 303.13, subd. 1(3), adequate provision had been made for service of process upon foreign insurance companies under § 64.27. Kulberg v. Fraternal Union of America, 131 Minn. 131, 154 N. W. 748; Braunstein v. Fraternal Union of America, 133 Minn. 8, 157 N. W. 721. This being true, to include such companies within the provisions of § 303.13, subd. 1(3), would not only be surplusage but in all probability lead to confusion and uncertainty.

As to the exclusion of individuals and partnerships from the terms of § 303.13, subd. 1(3), it may well be that, because the legislature has always dealt with foreign corporations as a separate subject matter and has set up many exacting requirements governing their qualifications to do business here, in furtherance of this general policy it limited the terms of § 303.13, subd. 1(3), to just such entities. Without determining whether § 303.13, subd. 1(3), would have been valid if its provisions were made applicable to individuals and partnerships, see Flexner v. Farson, 248 U. S. 289, 39 S. Ct. 97, 63 L. ed. 250, we hold that because the legislature did not include such entities within the provisions of § 303.13, subd. 1(3), the enactment did not result in an arbitrary or unreasonable classification of subject matters so as to render it invalid under the equal-protection clause of U. S. Const. Amend. XIV.

Affirmed.