SCRANTON GRAIN COMPANY, a Corporation, Plaintiff and Appellant,

v.

LUBBOCK MACHINE & SUPPLY COMPANY, a Corporation; Lubbock Manufacturing Company, Inc., a Corporation; and Fargo Foundry Steel & Manufacturing Co., a Corporation; Defendants,
and
Roper Hydraulics, Inc., a Corporation, Defendant and Respondent.

ROPER INDUSTRIES, INC., a Corporation, Defendant, Respondent, and Cross-Respondent,

v.

LUBBOCK MACHINE & SUPPLY COMPANY, a Corporation, Defendant and Third-Party Plaintiff,

v.

L. P. GAS TRANSPORT CO.; and Carl J. Austad & Son, a Corporation; Third-Party Defendants,
and
Scranton Equity Exchange, a Cooperative Association, Third-Party Defendant and Cross-Appellant.

Civ. No. 8518.

Supreme Court of North Dakota.

April 10, 1969.

Rehearing Denied May 27, 1969.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, and Heineke, Conklin & Schrader, Chicago, Ill., for plaintiff and appellant.

Zuger, Zuger & Bucklin, Bismarck, for defendant and respondent Roper Hydraulics, Inc., and for Roper Industries, Inc.

Frederick E. Saefke, Jr., Bismarck, for third-party defendant and cross-appellant Scranton Equity Exchange.

Fleck, Smith, Mather, Strutz, Mayer & Stewart, Bismarck, for Lubbock Machine & Supply Co. and for Lubbock Mfg. Co., Inc.

Nilles, Oehlert, Hansen, Selbo & Magill, Fargo, for Fargo Foundry Steel & Mfg. Co. (not involved in appeal).

Pearce, Engebretson, Anderson & Schmidt, Bismarck, for L. P. Gas Transport Co. and for Carl J. Austad & Son (not involved in appeal).

STRUTZ, Judge.

This action was commenced by the plaintiff for damages which it claims to have suffered because of the explosion of a transport truck belonging to the defendant Carl J. Austad & Son (Austad), which truck was delivering propane gas to the defendant Scranton Equity Exchange. The plaintiff alleges that such explosion was due in part to a defective fuel pump on the gas transport truck. The fuel pump in question had been sold to Austad by Fargo Foundry, an independent business concern located in Fargo, North Dakota. It had been manufactured by the defendants Roper Hydraulics, Inc., and Roper Industries, Inc. (Roper), and sold by them to Fargo Foundry, such sale being made in the State of Illinois. Fargo Foundry in turn sold it new to the defendant Austad. It is conceded that neither Roper Hydraulics nor Roper Industries has been admitted to do business in the State of North Dakota.

Roper maintained a sales manager for an area which included the States of Minnesota, North Dakota, South Dakota, and Montana. This sales manager lived in Minneapolis, Minnesota. Under the provisions of his written contract with Roper, he was required to use his best efforts to promote the sale of Roper products in the area assigned to him. He further was required to appoint, train, and develop distributors in his territory. He was not to promote the sale of pump products which are competitive to Roper products, and he was required, at the time of the execution of the contract, to notify Roper of any lines of products he was selling and, under the terms of the agreement, he was to keep Roper informed of any change in the sales representations which he maintained for such other products.

Such sales manager was required to maintain an office in the territory to be served

by him, which office was located in Minneapolis. The management and operation of such sales office was entirely the responsibility of the sales manager, and Roper was not to be liable for any expenses incurred in the operation of such office, the contract specifically providing:

"* * * it being understood that the District Sales Manager is carrying out this agreement as an independent operation and not as a branch office of Roper; * * *"

The contract also provided:

"(1) All sales of Roper pump products made by you shall be on orders taken in the name of Roper. Final acceptance of said orders shall be on the approval of Roper at its main office at Rockford, Illinois, and Roper reserves the right to refuse to accept orders because of credit rating or for other valid reasons."

The sales manager, who maintained his residence in Minneapolis, called on the defendant Fargo Foundry three or four times each year, including the year 1960 when the pump in question was sold to Fargo Foundry, and the year 1961 when the explosion in question occurred. During such visits, the sales manager would solicit and take orders for pumps manufactured by Roper. These orders thereafter were sent to Roper in Illinois to be approved and filled. The sales manager also supplied Fargo Foundry with advertising material for Roper pumps.

One of the pumps sold to Fargo Foundry thereafter was sold as a new pump by Fargo Foundry to the defendant Austad and was involved, in June of 1961, in the explosion out of which this action arose. The explosion occurred while Austad was unloading propane gas on the premises of the defendant Scranton Equity Exchange. The explosion damaged the plaintiff's elevators and contents in the alleged amount of $375,000.

Service of process was made upon the defendants Roper as foreign corporations, by mailing a copy of the summons and complaint to Roper Industries, Inc., 340 Blackhawk Park Avenue, Rockford, Illinois, and to Roper Hydraulics, Inc., 340 Blackhawk Park Avenue, Rockford, Illinois, postage paid, certified mail, return receipt requested.

This service, it is asserted, gave the court jurisdiction over the defendants Roper under that portion of Section 10–22–10, North Dakota Century Code, which reads:

"Whenever a claim shall arise out of business transacted in this state by a foreign corporation transacting business without a certificate of authority, service of process may be made * * * by mailing a copy thereof to the defendant corporation by registered or certified mail at its last known post office address."

The defendants thereupon made a Rule 12 motion to dismiss the complaint and to quash the service of summons, on the ground and for the reason that the court lacked jurisdiction over the defendants and that service of process was insufficient to give the court jurisdiction over them. The trial court, the Honorable Clifford Jansonius presiding, after hearing granted the motion and dismissed the action as to the defendants Roper Hydraulics, Inc., and Roper Industries, Inc. Since the court had not acquired jurisdiction over the defendants Roper, it also dismissed the cross-complaint which had been served upon the defendants Roper by the defendant Scranton Equity Exchange.

From the order dismissing the action and quashing the service of summons, the plaintiff and the cross-appellant, Scranton Equity Exchange, have taken this appeal, demanding trial de novo.

Lubbock Machine & Supply Company and Lubbock Manufacturing Company, Inc., hereinafter referred to as "Lubbock," also are foreign corporations, and are joined as defendants in this action. They sold the transport truck which was involved in this action and on which the pump manufactured and sold by Roper was installed at

the time of the explosion. Lubbock appeared specially for the purpose of objecting to the jurisdiction of the court over the said corporations, which jurisdiction was attempted to be secured in the same manner as that attempted over the defendants Roper. The motion to quash made by Lubbock came on for hearing before the Honorable W. C. Lynch, judge of the Fourth Judicial District, who denied such motion. The defendants Lubbock, deeming the order denying their motion to quash service of process not a final order, and therefore not appealable, have served and filed their answers. Whether valid service of process has been made on Lubbock must be determined by applying rules laid down in this and other decisions of this court to the facts in that case.

Whether the service attempted to be made upon the defendants Roper was valid service will, of course, depend upon whether the claim of the plaintiff arose out of business transacted in this State by the defendants, as foreign corporations which were transacting business in this State without a certificate of authority. There is no definite rule by which it can be determined whether a foreign corporation is transacting business within the State of North Dakota. As we held in the recent case of Fisher v. Mon Dak Truck Lines, Inc., 166 N.W.2d 371 (N.D.1969), each case must be decided upon its own particular set of facts, and no rule can be stated that will cover all situations.

In *Fisher*, we also held that in order that a foreign corporation may be determined to be transacting business in this State so as to make it amenable to service of process, it must appear that the concerns or businesses which are selling the products of such foreign corporation in this State are not independent business organizations transacting business for themselves but are, in fact, agents of such foreign corporation and that the activities of such organizations are controlled by the foreign corporation. In the case here before the court, the record shows that the Roper pump which is alleged to have been defective was sold to the defendant Austad by the defendant Fargo Foundry Company, to whom it had been sold by Roper. The record before us discloses no evidence to indicate that Roper had any control or authority over Fargo Foundry. A sales representative of Roper did call on Fargo Foundry three or four times each year. All other contacts by Roper with Fargo Foundry were made by mail. All requests for Roper goods were sent to Roper at its place of business in Illinois for approval and for filling of the orders. Thus all the record discloses is that one independent concern in North Dakota, Fargo Foundry, was buying the products of Roper and then reselling them to customers in the State of North Dakota. Through a nonresident sales manager of Roper who called on Fargo Foundry three or four times a year, or by mail to Roper offices in Illinois, Fargo Foundry would order such Roper pumps as it needed in its business, and these then were shipped into North Dakota pursuant to such orders. Nothing in the relationship of Roper and Fargo Foundry indicates that Fargo Foundry was in any way controlled by Roper or that Roper had any authority over any of the activities of Fargo Foundry.

■ The plaintiff cites a number of cases which it asserts support its contention that Roper was transacting business in the State of North Dakota, and thus was amenable in our courts to service of process. One of the cases which plaintiff asserts supports its contention is International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945). However, a careful reading and analysis of the *International Shoe Company* case will show important differences in the facts in that case and the facts which face us in the case now under consideration. In *International Shoe*, the foreign corporation systematically and continuously employed a force of salesmen in the State of Washington, which was the State of the forum, all of whom resided in that State. Furthermore,

the purpose of the action brought against the foreign corporation in the State of Washington was to compel the foreign corporation to pay unemployment compensation tax on its salesmen who resided in the State of the forum. The United States Supreme Court held that the employment of such salesmen, all living and working in the State of Washington, was sufficient to subject the employment of such persons to the Washington unemployment compensation tax, even though they were employees of a foreign corporation. Whether International Shoe Company was transacting business within the State of Washington so that service of process could have been made on it for any purpose other than the imposition of the unemployment compensation tax on its employees, living and working in the State of Washington, is not decided. We do not believe that case supports the contention of the plaintiff in the case before us. In our case, one nonresident sales representative came into the State of North Dakota on three or four occasions each year. He called on one concern, the defendant Fargo Foundry. Roper maintained no office or sales force in North Dakota, but sold its pumps only to this one independent distributor who then sold them to the ultimate user. Roper exercised absolutely no authority or control of any kind over Fargo Foundry. Thus Roper cannot be held to be *transacting business* in this State within the meaning of that phrase as used in Section 10–22–10, North Dakota Century Code.

Counsel for Roper point out that the term "transacting business" is defined by an express statute in North Dakota. Sec. 10–22–01, N.D.C.C. This section does provide that a foreign corporation shall not be considered to be transacting business in North Dakota, for certain purposes, by reason of—

    \*    \*    \*    \*    \*    \*

"5. Effecting sales through independent contractors;

"6. Soliciting or procuring orders, whether by mail or through employees or agents or otherwise, where such orders require acceptance without this state before becoming binding contracts;

    \*    \*    \*    \*    \*    \*

"9. Transacting any business in interstate commerce; \* \* \*

    \*    \*    \*    \*    \*    \*

While this definition of what is not transacting business in North Dakota does not purport to establish a standard for activities which may or may not subject a foreign corporation to taxation or to service of process in this State, it does lay down, we believe, a reasonable definition of the term "transacting business." Where such foreign corporation's products are sold to a North Dakota buyer through an independent North Dakota concern, over which the foreign corporation exercises absolutely no control, it cannot be said that the foreign corporation is transacting business in this State.

The plaintiff contends that when the foreign corporation manufactures a defective pump, and such pump subsequently is shipped into the State of North Dakota, the presence of the product in this State creates a jurisdictional contact out of which the cause of action arose. In support of this contention, it cites the Minnesota case of Atkins v. Jones & Laughlin Steel Corporation, 258 Minn. 571, 104 N.W.2d 888 (1960), and the Illinois case of Gray v. American Radiator & Standard Sanitary Corporation, 22 Ill.2d 432, 176 N.E.2d 761 (1961). In *Atkins*, the Minnesota Supreme Court held that the injury was an indispensable element to recovery in tort, and, since the injury occurred in the State of Minnesota, the courts of Minnesota, under the Minnesota statutes, had jurisdiction. We would point out, however, that the Minnesota statute under which this case was decided is far broader in scope than is the statute of North Dakota under which the plaintiff has attempted to serve the foreign corporations Roper. The only requirement for jurisdiction under the Minnesota stat-

ute is that the action must be founded upon a contract with a Minnesota resident, to be performed in whole or in part in the State of Minnesota, *or* that it be founded upon a *tort* committed in whole or in part in the State of Minnesota against a Minnesota resident. Minn.Stat. 303.13(3) (Supp. 1965).

Another decision relied upon by the plaintiff is the Illinois case of Gray v. American Radiator & Standard Sanitary Corporation, *supra*. This was a suit brought by an Illinois resident for injuries received when a water heater allegedly exploded. One of the defendants was a foreign corporation, and this defendant moved for dismissal of the complaint and cross-complaint which had been filed against it. Such foreign corporation had manufactured the safety valve which had been installed on the water heater. This heater thereafter was sold to an Illinois customer, and the explosion occurred in the State of Illinois, due, it was alleged, to a defective safety valve. The Illinois court held that the foreign corporation was subject to service of process in the State of Illinois under the Illinois statute which provided that a foreign corporation which commits a tortious act within the State of Illinois submits to the jurisdiction of the Illinois courts. Ill.Rev.Stat.1967, Ch. 110, Sec. 17.

North Dakota has no such broad statute which would authorize service of process on a nonresident defendant in any cause where a tort has resulted in the State of North Dakota. Here, the statute relied upon by the plaintiff provides for service on a nonresident defendant, "Whenever a claim shall arise out of business transacted in this state * * *." From the facts established by this record, the defendants Roper were not transacting business in the State of North Dakota. All orders were sent to the foreign corporation at its place of business in Illinois for approval. The concern which placed the orders was an independent business organization which was not in any way controlled by the foreign corporation.

The Legislative Assembly, which recently concluded its session, obviously realized that our present statutes providing for service upon foreign corporations are not so broad in their scope as are the statutes or rules of procedure in other jurisdictions. In an attempt to bring our statutes on this subject in line with those of other jurisdictions, the 1969 Legislature enacted into law Senate Bill No. 412. This Act, when it becomes effective on July 1, will broaden the jurisdiction of our courts over nonresidents transacting business in this State and permit service of process upon nonresidents previously exempt under our law.

We would also point out that hearings have already been held in this court on proposed new rules of civil procedure and proposed amendments to existing rules of civil procedure. These proposed changes include a complete restatement of Rule 4, providing for service of process. If this new Rule 4 is adopted as now proposed, the extent or application of the rule providing for service of process upon nonresidents will be greatly enlarged.

In the case before us, however, under the provisions of Section 10–22–10, North Dakota Century Code, under which section service upon the defendants Roper was attempted to be made, where such defendants had no activity in the State except as shown by the record before us, service upon such nonresident corporations was not valid. Whether the court had jurisdiction in this case must be determined under the provisions of our law in effect at the time the service was attempted to be made. We find that such service was not valid and that the court did not obtain jurisdiction over the defendants Roper.

For reasons stated in this opinion, the order of the trial court quashing service of process upon the defendants Roper is affirmed.

TEIGEN, C. J., and KNUDSON, ERICKSTAD and PAULSON, JJ., concur.